[No. 2249. Decided May 21, 1896.]

*In the Matter of the Estate of George H. Heilbron, Deceased:* THE GUARANTEE LOAN AND TRUST COMPANY, *Respondent,* v. GEORGE F. FAY *et al., Executors, Appellants.*

CONSTITUTIONAL LAW — IMPAIRMENT OF OBLIGATION OF CONTRACTS — STATUTE EXEMPTING PROCEEDS OF INSURANCE POLICIES.

A policy of life insurance and the money to become due under it, belong from the moment the policy is issued to the beneficiary therein named, and it is beyond the power of the insured to transfer to any other person the interest of such beneficiary.

A legislative enactment which so far affects the remedy subsisting when and where a contract is made, as substantially to impair and lessen the value of such contract, conflicts with § 10, art. 1, of the Federal constitution, providing that "no state shall pass any law . . . impairing the obligation of contracts."

A statute should not be given a retroactive construction, when to so construe it impairs existing rights, unless it clearly appears that such was the legislative intention.

Act of March 20, 1895, providing that "the proceeds or avails of all life insurance shall be exempt from all liability for any debt" construed and *held* to be prospective merely.

Appeal from Superior Court, King County.—Hon. J. W. LANGLEY, Judge. Reversed.

*R. S. Strudwick,* for appellants.

*Preston & Albertson,* for respondent.

The opinion of the court was delivered by

GORDON, J.—This action was tried in the superior court for King county and findings of fact and conclusions of law were duly made. No exceptions were taken to any of the findings of fact, and it appears therefrom that the appellants are executors of the last will of one George H. Heilbron, who died on the 5th of April, 1895, leaving in force two life insurance policies issued to him in April, 1889, by the Equitable Life Insurance Society of the United States, each of

said policies being for the sum of $5,000.00 payable to his executors in case of his death. All of the premiums upon said policies were paid by the said George H. Heilbron. After the probate of the will of the deceased the amount of said policies was paid to the appellants as such executors.

By the terms of his will the said George H. Heilbron bequeathed to his brother, W. C. Heilbron, the sum of $5,000.00. Other legacies were bequeathed aggregating an additional sum of $3,500.00. On June 27, 1895, the said W. C. Heilbron assigned and transferred to the respondent, the Guarantee Loan and Trust Company of Seattle, the whole of said legacy of $5,000,00. The ninth finding of the court was as follows:

"That the said George H. Heilbron, in his lifetime, and prior to March 20th, 1895, made, incurred and contracted many *bona fide* debts and obligations to various and sundry creditors. That said debts and obligations are still outstanding, wholly unpaid and in full force and effect; and that the said creditors have filed their said claims, duly verified, as required by law, and the same have been allowed, with said respondents, and are demanding of said respondents the payment of their said demands from the assets of the estate of said George H. Heilbron, including the ten thousand dollars of insurance money mentioned in said petition.

That the number and amount of said demands, debts and obligations is such that all the assets which have come into the hands of said respondents, or which will come into the hands of said executors, including the ten thousand dollars of insurance money mentioned in said petition, will be required to pay off and discharge said debts and obligations; if said funds are applied to their payment; and if said legacies are paid by said respondents out of said insurance money it will result in depriving the said creditors of the payment of a portion of their said debts."

The respondent, as assignee of the legacy bequeathed to the said W. C. Heilbron, having demanded of the executors (appellants) payment thereof out of said insurance fund in their hands, instituted the present proceeding claiming that the fund derived by the executors from said life insurance was exempt from any and all debts of the deceased by virtue of the act of March 20, 1895, which is as follows:

"That the proceeds or avails of all life insurance shall be exempt from all liability for any debt." (Laws 1895, p. 336.)

The lower court concluded as a matter of law—

" That said insurance fund of ten thousand dollars in the hands of said executors is exempt from all liability for any debt of said George H. Heilbron, deceased, and that said petitioner, The Guarantee Loan and Trust Company, is, as the assignee of said W. C. Heilbron, entitled to be paid by said executors out of said fund of ten thousand dollars, the sum of five thousand dollars bequeathed by said will to said W. C. Heilbron, and by him assigned to said petitioner as aforesaid,"

and entered an order and decree accordingly, from which this appeal was taken.

Upon the part of appellants it is argued that the order and decree cannot be sustained without giving retrospective effect to the statute above set out, and that the legislature did not intend that it should operate upon insurance effected or indebtedness contracted prior to its passage, and that if it should be considered that the act in question was intended to operate retroactively, and to exempt the proceeds of life insurance in effect at the date of its enactment from liability for indebtedness contracted prior to that time, then that the act is unconstitutional in that it impairs the obligation of a contract. Sec. 10, art. 1 of the Federal constitution provides:

"No state shall pass any law  .  .  .  impairing the obligation of contracts,"

and § 23, art. 1, of the constitution of this state provides that

"No law impairing the obligations of contracts shall ever be passed."

It is objected by respondent's counsel that it does not appear from the record that the debts in question were contracted subsequently to the issuance of the policies.    We are disposed to regard this objection as technical merely, and not warranting serious consideration, inasmuch as it affirmatively appears that the policies were issued in the year 1889, — six years prior to Mr. Heilbron's death, — and while the precise nature and character of the indebtedness does not appear upon the record, it is stated in the ninth finding that there were outstanding at the date of his death "many *bona fide* debts and obligations to various and sundry creditors," from which we think it is fairly to be presumed that some at least of said debts were contracted within six years prior to his death, especially in view of our statute of limitations.

Upon behalf of respondent it is contended that the statute under consideration was intended to apply "both to antecedent policies and antecedent debts," and it becomes necessary to consider whether, so construing it, the act conflicts with the constitutional provisions above set out.    Statutes of this character are founded on charity, they are remedial and partake of the nature of, but are not strictly, exemption laws. *Cole v. Marple*, 98 Ill. 58 (38 Am. Rep. 83); *Fearn v. Ward*, 65 Ala. 33.    And we may add that such laws should be liberally construed for the purpose of effecting the object intended.    It is manifest that the fund derived from the insurance company is liable for the

payment of the indebtedness owing by said Heilbron at the time of his death, unless the act of the legislature in question operates to render said fund exempt. The rule is well settled that a policy of life insurance and the money to become due under it belong from the moment the policy is issued to the beneficiary therein named, and it is beyond the power of the insured to transfer to any other person the interest of such beneficiary. *Central Bank of Washington v. Hume*, 128 U. S. 195 (9 Sup. Ct. 41); *Wilburn v. Wilburn*, 83 Ind. 55; *Glanz v. Gloeckler*, 104 Ill. 573 (44 Am. Rep. 94; *Ricker v. Charter Oak Life Ins. Co.*, 27 Minn. 193 (38 Am. Rep. 289, 6 N. W. 771); *Charter Oak Life Ins. Co. v. Brant*, 47 Mo. 419 (4 Am. Rep. 328); *Gould v. Emerson*, 99 Mass. 154 (96 Am. Dec. 720).

In *Burton v. Farinholt*, 86 N. C. 260, the insured had effected insurance upon his life for the benefit of himself, *his executors, administrators and assigns;* thereafter he made a voluntary assignment of said policy to his daughters,— he then being insolvent, and without retaining property sufficient to pay his debts. The supreme court of North Carolina say:

"The life policy in question was the property of the plaintiff's intestate. As soon as delivered, it vested in him, and like any other *chose in action* became an integral part of his estate, subject to every rule of property known to the law. Being indebted to a state of clear insolvency at the time of its voluntary assignment to his daughters, his act was fraudulent as to his creditors and void in law, whether made with an intent actually fraudulent or not. It is principle of the common law, as old as the law itself, and upon which the preservation of all property depends, that, except so far as the same may be exempt by positive law, the whole of every man's property shall be devoted to the payment of his debts. He cannot gratuitously give

away any part of it, the law meaning that he shall be just to his creditors before he is generous to his family. From the fact that he was at the time insolvent, and that his transfer to his daughters was without valuable consideration, it results, as a conclusion of law, that the assignment was void as to his creditors."

And a similar conclusion was reached by the supreme court of Pennsylvania in the case of the *Appeal of Elliott's Executors*, 50 Pa. St. 75 (88 Am. Dec. 525). These cases are cited approvingly by the supreme court of the United States in *Washington Central Bank v. Hume, supra*, and must be regarded as establishing the right of creditors of an insolvent debtor in and to insurance effected by him and payable to his executors or administrators, and deny his right while such state of insolvency exists to make any assignment of the insurance which would have the effect of putting the same beyond the reach of his creditors. The only case which we have found where a different conclusion was reached is that of *Cole v. Marple, supra*, which is, however, distinguishable from the cases above cited in this, that the assignment in the Illinois case was upheld by the court as a transaction authorized by the statute of that state. Justice SHELDON in dissenting from the conclusion of the majority in that case held that "the assignment of it was a gift of the property to his wife, and void as against creditors," adding, " I do not regard the statute as applying to the case." We do not regard that case as at all opposed to the doctrine announced in *Burton v. Farinholt, supra*, and *Elliott's Appeal, supra*. On the contrary, we think that a careful reading of the opinion of the majority of the court therein will show a distinct recognition of the doctrine so announced, while the conclusion reached was based upon a statute. It seems to us to follow, that if by reason of his insolvent condition it was beyond

the power of the insured at the date of the passage of the act in question to have assigned these policies to the respondent, or to its assignor, it was also beyond the power of the legislature to enact legislation which would effect the like object.

Appellants' counsel concedes that whatever belongs merely to the remedy may as a general proposition be altered according to the will of the legislature, provided always that the alteration does not impair the obligation of a contract. He also insists, however, that if the effect of the alteration occasions the impairment of the contract, it is immaterial whether it is done by acting on the remedy or directly upon the contract itself and to this we must yield our assent.

In the case of *Edwards v. Kearzey*, 96 U. S. 607, the Supreme Court of the United States say that

" The remedy subsisting in a state when and where a contract is made and is to be performed is a part of its obligation; and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the constitution, and is, therefore, void."

It is contended by respondent that the interest of the insured in these policies prior to his death was not property of that tangible character contemplated by the rule which, as against creditors, forbids the transfer of his property by an insolvent debtor, but we think that the great weight of authority is that the policy of life insurance is a chose in action governed by the principles applicable to other agreements involving pecuniary obligations. *Butson v. Merrifield*, 51 Ind. 24 (19 Am. Rep. 722); *Burton v. Farinholt*, 86 N. C. 260; *St. John v. American Mutual Life Ins. Co.* 13 N. Y. 31 (64 Am. Dec. 529); *Continental Life Ins. Co. v. Palmer*, 42 Conn. 60 (19 Am. Rep. 530); *Anthracite Ins. Co. v. Sears*, 109 Mass. 383.

To construe the statute therefore as retroactive would require us to hold that it impaired existing rights and we ought not to incline to such a construction where it does not clearly appear that such was the legislative intention.   Retroactive statutes are generally regarded with disfavor and we think that the act under consideration must be construed as prospective only.

In Sutherland on Statutory Construction, § 464, the learned author says:

"A statute should not receive such construction as to make it impair existing rights, create new obligations, impose new duties in respect of past transactions, unless such plainly appear to be the intention of the legislature.   In the absence of such plain expression of design, it should be construed as prospective only, although *its words are broad enough in their literal extent to comprehend existing cases.*"

The order and decree appealed from will be reversed and the cause remanded for further proceedings in conformity with this opinion.

Hoyt, C. J., and Anders and Dunbar, JJ., concur.